07 C 6722

JUDGE ZAGEL
MAGISTRATE JUDGE KEYS

# EXHIBIT G

# THE CINCINNATI INSURANCE COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
(513) 870-2000

# COMMERCIAL UMBRELLA LIABILITY POLICY DECLARATIONS

RENEWAL OF   CCC 448 50 58

| Item | DECLARATIONS | POLICY NUMBER CCC 448 50 58 |
|---|---|---|
| 1. | GREG GREENHILL CONSTRUCTION, CO., INC. <br> 5419 HAYDEN LANE <br> RINGWOOD, IL 60072 <br><br> TAX ID #005078 | NAMED INSURED ADDRESS <br><br> *RECEIVED AUG 0 8 2003 DATA ENTRY* |
| 2. | From: **02-23-2003** To: **02-23-2004** Policy Period | 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN |
| | T.J. ADAMS GROUP LLC 12-207 <br> LOMBARD, IL | AGENCY |
| 3. | LIMITS OF INSURANCE <br> $  **5**  ,000,000 Each Occurrence Limit    $  **5**  ,000,000 Aggregate Limit | |
| 4. | PREMIUM is payable   ☐ Annually   ☐ Semi-annually   ☒ Quarterly as follows <br> Advance Premium           $ **3.993** (includes installment charge $ **5** ) <br> Each Subsequent Installment   $ **3.993** (includes installment charge $ **5** ) <br><br> **PORTION OF TOTAL ANNUAL PREMIUM ATTRIBUTABLE TO TERRORISM COVERAGE $0** <br> Applicable to Premium, if box is checked:    P <br> ☐   Subject to Annual Adjustment <br> ☐   Subject to Audit (see Endorsement for Rating Basis)   *MOD* | |
| 5. | Form Numbers of the Policy and Endorsements forming a part of the policy at issue: <br> CA1139   01/86    IA4236   11/02    IA4238   02/03    IP446    08/01 <br> US101P   04/99    US3011   01/01    US302    01/98    US3044   09/01 <br> US357    01/96    US407    01/96    US411IL   06/97    US511    05/90 | |

## SCHEDULE A—SCHEDULE OF UNDERLYING POLICIES

| | Insurer, Policy Number & Period | Type of Policy | | Applicable Limits | |
|---|---|---|---|---|---|
| (a) | CINCINNATI INS. CO. <br> WC 899 04 94 <br> 02-23-2003 TO 2004 | Employer's Liability | $ 500,000 <br><br> $ 500,000 <br><br> $ 500,000 | Employer's Liability <br> Bodily Injury By Accident Each Accident <br> Bodily Injury By Disease Each Employee <br> Bodily Injury By Disease Policy Limit | |
| (b) | CINCINNATI INS. CO. <br><br> CPP 073 18 29 <br> 02-23-2003 TO 2004 | Commercial General Liability including <br> ☒ products-completed operations coverage | $ 1,000,000 <br> NONE <br><br><br><br> $ 2,000,000 <br><br><br> $ 1,000,000 | Bodily Injury and Property Damage Liability <br> each occurrence limit <br> general aggregate limit (other than products-completed operations) <br> products-completed operations aggregate limit <br> Personal Injury and Advertising Injury Limit | |
| (c) | SAME AS (b) | Automobile Liability including <br> ☒ owned automobiles <br> ☒ non-owned automobiles <br> ☒ hired automobiles | $ <br> $ <br><br> $ <br><br><br><br><br> $ 500,000 | Bodily Injury Liability <br> each person <br> each occurrence <br> Property Damage Liability <br> each occurrence <br> or <br> Bodily Injury Liability and/or Property Damage Liability or Both Combined each occurrence | |

This is a true & certified copy of policy.

Marc Phillips, Vice President

*NC* <br> *CSU PMS AUG 1 3 2003*

## RETURN THIS DECLARATION TO COMPANY IF CANCELLED

Countersigned by

Authorized Representative

08-05-2003 LB8

The address of the Complaint Department of The Cincinnati Insurance Company is P.O. Box 145496, Cincinnati, Ohio, 45250-5496.

The address of the Public Service Division of the Department of Insurance is 320 West Washington, Springfield, Illinois, 62767.
CA-1139 (1/86)

USC504 01 96

000064

# THE CINCINNATI INSURANCE COMPANY
### P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
### (513) 870-2000

## COMMERCIAL UMBRELLA LIABILITY POLICY DECLARATIONS
RENEWAL OF    CCC 448 50 58

| Item | DECLARATIONS | POLICY NUMBER CCC 448 50 58 |
|---|---|---|
| 1. | GREG GREENHILL CONSTRUCTION CO., INC.<br>5419 HAYDEN LANE<br>RINGWOOD, IL 60072<br><br>TAX ID #005078 | NAMED INSURED ADDRESS |

| 2. | From: 02-23-2003  To: 02-23-2004 | Policy Period | 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN |
|---|---|---|---|
|  | T.J. ADAMS GROUP LLC 12-207<br>LOMBARD, IL |  | AGENCY |

**3.** LIMITS OF INSURANCE
$     5   ,000,000 Each Occurrence Limit      $     5   ,000,000 Aggregate Limit

**4.** PREMIUM is payable    ☐ Annually    ☐ Semi-annually    ☒ Quarterly as follows
Advance Premium          $  3.993       (includes installment charge $ 5         )
Each Subsequent Installment  $  3.993       (includes installment charge $ 5         )

**PORTION OF TOTAL ANNUAL PREMIUM ATTRIBUTABLE TO TERRORISM COVERAGE $0**
Applicable to Premium, if box is checked:
☐    Subject to Annual Adjustment
☐    Subject to Audit (see Endorsement for Rating Basis)

**5.** Form Numbers of the Policy and Endorsements forming a part of the policy at issue:

| | | | | | | |
|---|---|---|---|---|---|---|
| US511 | 05/90 | US101P | 04/99 | CA1139 | 01/86 | US411IL | 06/97 |
| IA4236 | 11/02 | IA4238 | 02/03 | IP446 | 08/01 | US3011 | 01/01 |
| US302 | 01/98 | US3044 | 09/01 | US357 | 01/96 | US407 | 01/96 |

## SCHEDULE A--SCHEDULE OF UNDERLYING POLICIES

| | Insurer, Policy Number & Period | Type of Policy | | Applicable Limits |
|---|---|---|---|---|
| (a) | CINCINNATI INS. CO.<br>WC 899 04 94<br>02-23-2003 TO 2004 | Employer's Liability<br><br><br>JKD  MAR 1 1 2003 | $ 500,000<br><br>$ 500,000<br><br>$ 500,000 | Employer's Liability<br>Bodily Injury By Accident<br>Each Accident<br>Bodily Injury By Disease<br>Each Employee<br>Bodily Injury By Disease<br>Policy Limit |
| (b) | CINCINNATI INS. CO.<br>CPP 073 18 29<br>02-23-2003 TO 2004<br><br>SEE CORRECTED | Commercial General Liability<br>including<br>☒ products-completed<br>operations coverage | $ 1,000,000<br><br>$ NONE<br><br><br>$ 2,000,000<br><br><br>$ 1,000,000 | Bodily Injury and<br>Property Damage Liability<br>each occurrence limit<br>general aggregate<br>limit<br>(other than products-<br>completed operations)<br>products-completed<br>operations aggregate<br>limit<br>Personal Injury and<br>Advertising Injury Limit |
| (c) | SAME AS (b)<br>MAR 1 0 2003 | Automobile Liability<br>including<br>☐ owned automobiles  $<br>☒ non-owned automobiles  $<br>☒ hired automobiles  $ | <br><br><br><br><br><br>$ 500,000 | Bodily Injury Liability<br>each person<br>each occurrence<br>Property Damage Liability<br>each occurrence<br>or<br>Bodily Injury Liability<br>and/or Property Damage<br>Liability or Both Combined<br>each occurrence |

### RETURN THIS DECLARATION TO COMPANY IF CANCELLED
Countersigned by

_____
Authorized Representative

02-27-2003 LB8

**COMPANY COPY**

USC504 01 96

000065

NAMED INSURED: **GREG GREENHILL CONSTRUCTION, CO., INC.**
EFFECTIVE DATE **02-23-2003**

ADDITIONAL SCHEDULE A--SCHEDULE OF UNDERLYING POLICIES Issued to Form a Part of Policy
No. **CCC 448 50 58**

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
|---|---|---|
| (d) CINCINNATI INS. CO. CPP 073 18 29 02-23-2003 TO 2004 | EMPLOYEE BENEFIT LIABILITY | 1,000,000 EACH CLAIM 3,000,000 AGGREGATE |
| (e) SAME AS (d) | BI EXCEPTIONS TO POLLUTANT EXCLUSION | 1,000,000 AGGREGATE |

000066

# COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Who is an Insured (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to Definitions (Section V).

In return for the payment of premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## SECTION I - COVERAGES

### A. Insuring Agreement

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance" or for an "occurrence" covered by this policy which is either excluded or not covered by "underlying insurance" because of:

1. "Bodily injury" or "property damage" covered by this policy occurring during the policy period and caused by an "occurrence"; or

2. "Personal injury" or "advertising injury" covered by this policy committed during the policy period and caused by an "occurrence".

This coverage applies anywhere.

The amount we will pay is limited as described in Limits of Insurance (Section III).

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense and Supplementary Payments.

### B. Exclusions

This policy does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

2. **Breach of Contract, Failure to Perform, Wrong Description**

   "Advertising injury" arising out of:

   a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   b. The failure of goods, products or services to conform with advertised quality or performance; or

   c. The wrong description of the price of goods, products or services.

3. **Damage to Impaired Property or Property Not Physically Injured**

   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

4. **Damage to Property**

"Property damage" to property owned by any insured.

5. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

6. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

7. **Employer's Liability Limitation**

"Bodily injury" or "personal injury" to:

a. An "employee" of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of **a.** above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply when such insurance is provided by a valid and collectible policy listed in the Schedule of Underlying Policies, or would have been provided by such listed policy except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance".

8. **Employment-Related Practices**

"Bodily injury" or "personal injury" to:

a. A person arising out of any:

   (1) Refusal to employ that person;

   (2) Termination of that person's employment; or

   (3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

9. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured even if the injury or damage is of a different degree or type than actually intended or expected.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

US 101 P 04 99

000068

This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

10. **Falsity, Prior Publication, Willful Violation**

"Advertising injury" or "personal injury" arising out of:

a. Oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity;

b. Oral or written publication of material whose first publication took place before the beginning of the policy period; or

c. The willful violation of a penal statute or ordinance committed by or with the consent of the insured.

11. **Laws**

Any liability or obligation of the insured under any of the following laws:

a. Any workers' compensation, unemployment compensation, disability benefits or similar law, however, this exclusion does not apply to liability of others assumed by you under any valid contract in existence at the time of "occurrence", or

b. Any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

12. **Non-Owned Auto Limitation**

Any liability of the owner or anyone else, except "executive officers" and owners of insured organizations, arising out of the ownership, maintenance or use of any "auto" which you do not own, unless such coverage is provided by a valid and collectible policy listed in the Schedule of Underlying Policies, and then only for such hazards for which coverage is provided by such "underlying insurance".

13. **Pollutant**

a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(1) That are, or that are contained in any property that is:

(a) Being transported or towed by, handled, or handled for movement into, onto or from, the "auto";

(b) Otherwise in the course of transit by or on behalf of the insured; or

(c) Being stored, disposed of, treated or processed in or upon the "auto";

(2) Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

(3) After the pollutants or any property in which the pollutants are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if the pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs (2) and (3) above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to pollutants not in or upon an "auto" if:

(a) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

000069

**b.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(a) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Paragraphs (1) and (4) (a) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**c.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

**d.** Any liability caused by pollutants excluded by "underlying insurance".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment.

Exclusion **13.** applies to every injury to person or property caused directly or indirectly by pollutants regardless of whether:

**a.** The insured is regularly or otherwise engaged in activities that taint or degrade the environment; or

**b.** The insured uses, generates or produces the pollutant.

**14. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**15. War**

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

US 101 P 04 99

000070

"Bodily injury" or "property damage" due to war, whether or not declared or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement. This exclusion does not apply with respect to "occurrences" taking place in the United States of America, its territories or possessions, or Canada.

## C. Defense and Supplementary Payments

1. We have the right and duty to defend any claim or "suit" against the insured for damages covered by this policy, even if the allegations are groundless, false, or fraudulent, when:

    a. The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

    b. Damages are sought for "bodily injury", "property damage", "personal injury" or "advertising injury" which are not covered by "underlying insurance" or other insurance.

2. When we have the duty to defend we will pay all expenses we incur in addition to the applicable limits of insurance.

    Our right and duty to defend ends when the applicable limits of insurance as stated in the Declarations has been exhausted by payment of claims.

3. We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" for which coverage may be afforded by this policy. If we exercise this right, we will do so at our expense.

4. If there is no underlying insurer obligated to do so we will pay the following when we provide a defense:

    a. All expenses we incur.

    b. The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

    c. The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds.

    d. Reasonable expenses incurred by the insured at our request to assist us in the investigation of defense of the claim or "suit", including the actual loss of earnings.

    e. All costs taxed against the insured in the "suit".

    These payments will not reduce the limits of insurance.

5. If there is no underlying insurer obligated to do so we will pay the following for an "occurrence" to which this insurance applies even if we have no duty to provide a defense:

    a. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay. If we make an offer to pay the applicable limits of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    b. All interest awarded against the insured on that amount of any judgment which we become obligated to pay that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment which we are obligated to pay and that is within the applicable limits of insurance.

    These payments will not reduce the limits of insurance.

6. If we are prevented by law or otherwise from carrying out any of the provisions of Section **C.** Defense and Supplementary Payments, we will pay any expense incurred with our written consent.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

000071

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture, or limited liability company, you are an insured. Each of the following is also an insured:

   (1) Any subsidiary company of such organization, including any subsidiary company thereof:

      (a) Existing at the effective date of this policy; or

      (b) Acquired during the policy period.

   (2) Any other company controlled and actively managed by such organization or any such subsidiary:

      (a) At the effective date of this policy; or

      (b) If the control and active management thereof was acquired during the policy period.

2. Each of the following is also an insured:

a. Any "executive officer", director, "employee" or stockholder of yours while acting within the scope of their duties as such.

b. Any person, organization, trustee or estate with respect to which you are obligated by written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of you or property owned or used by you.

c. Any person or organization while acting as your real estate manager.

d. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

e. Your legal representative if you die, but only with respect to duties as such.

f. At your option and subject to the terms of the coverage of this insurance, any additional insureds covered in the "underlying insurance" listed in the Schedule of Underlying Policies, but only to the extent that insurance is provided for such additional insureds thereunder.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all damages:

a. Included in the "products-completed operations hazard"; or

b. Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

000072

The Aggregate Limit applies separately to **a.** and **b.**

3. Subject to limits described in **2.** above the Each Occurrence Limit is the most we will pay for the "ultimate net loss":

   a. In excess of the applicable limits of "underlying insurance"; or

   b. If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this policy

   because of all "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any one "occurrence".

   We will not pay more than the Limits of Insurance shown in the Declarations for each "occurrence" because any Personal Umbrella Liability Endorsement(s) is attached to and forms a part of this policy.

4. Subject to limits described in **2.** and **3.** above and to the terms and conditions of the "underlying insurance":

   a. If the limits of "underlying insurance" have been reduced by payment of claims, this policy will continue in force as excess of the reduced "underlying insurance"; or

   b. If the limits of "underlying insurance" have been exhausted by payment of claims, this policy will continue in force as "underlying insurance".

5. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Appeals**

   If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond our applicable limits of liability for all "ultimate net loss" plus the expense of such appeal.

2. **Audit**

   We may audit and examine your books and records as they relate to this insurance at any time during the policy period and up to three years afterwards.

3. **Bankruptcy**

   Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this policy.

4. **Cancellation**

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing to us written notice stating when thereafter the cancellation shall be effective.

   b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 60 days before the effective date of cancellation if we cancel for any other reason.

   c. Our notice of cancellation will be mailed to the first Named Insured's last mailing address known to us and will indicate the date on which coverage is terminated. The policy period will end on that date. The cancellation will be effective for all insureds.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

000073

    **d.**  If we cancel, the return premium will be computed pro rata.  If the first Named Insured cancels, the return premium will be computed at 90% of pro rata.  The cancellation will be effective even if we have not made or offered a refund.

    **e.**  If the notice is mailed, proof of mailing will be sufficient proof of notice.

**5.**  **Changes**

    This policy contains all the agreements between you and us concerning this policy.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by a written endorsement issued to form a part of this policy, signed by our duly authorized representative.

**6.**  **Duties In The Event of Occurrence, Claim or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit".  To the extent possible, notice should include:

        **(1)**  How, when and where the "occurrence" took place;

        **(2)**  The names and addresses of any injured persons and witnesses; and

        **(3)**  The nature and location of any injury or damage arising out of the "occurrence".

    This requirement applies only when the "occurrence" is known to:

        **(1)**  You, if you are an individual;

        **(2)**  A partner, if you are a partnership;

        **(3)**  A member, if you are a joint venture; or

        **(4)**  A member or manager, if you are a limited liability company; or

        **(5)**  An "executive officer" or insurance manager, if you are an organization other than a partnership, joint venture or limited liability company.

    **b.**  If a claim is made or "suit" is brought against any insured that is likely to involve this policy, you must:

        **(1)**  Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**  Notify us as soon as practicable.

    This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to:

        **(1)**  You, if you are an individual;

        **(2)**  A partner, if you are a partnership;

        **(3)**  A member, if you are a joint venture;

        **(4)**  A member or manager, if you are a limited liability company; or

        **(5)**  An "executive officer" or insurance manager if you are an organization other than a partnership, joint venture or limited liability company.

    **c.**  You and any other involved insured must:

        **(1)**  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**  Authorize us to obtain records and other information;

        **(3)**  Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

        **(4)**  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

          

000074

  **d.** No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

7. **First Named Insured**

   The person or organization first named in Item 1 of the Declarations will act on behalf of all other insureds where indicated in this policy.

8. **Inspections and Surveys**

   We have the right but are not obligated to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

   Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

   This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

9. **Legal Action Against Us and Loss Payments**

   **a.** No legal action may be brought against us unless there has been full compliance with all the terms of this policy nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this policy to bring us into any action to determine the liability of the insured.

   **b.** We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this policy applies:

      **(1)** For "occurrences" not covered by "underlying insurance"; or

      **(2)** In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

   Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

10. **Maintenance of Underlying Insurance**

    While this policy is in effect, the insured shall maintain in force the "underlying insurance" listed in the Schedule of Underlying Policies as collectible insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage. Limits of "underlying insurance" will not be reduced except for any reduction or exhaustion in the aggregate limits of insurance due to payment of claims. In the event you fail or neglect to maintain "underlying insurance" as required, this policy will apply as though such "underlying insurance" was in force and collectible at the time of the "occurrence".

    The limits of "underlying insurance" shall be deemed applicable regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the insured's failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

11. **Other Insurance**

    The insurance provided by this policy is excess over any other valid and collectible insurance, other than insurance written specifically to be excess over this insurance, and shall not be contributory.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

**000075**

**12. Premium**

The premium for this policy shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this policy.

You shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the policy period and at such times during the policy period as we may direct.

**13. Representations**

By acceptance of this policy, you agree that the statements in the Declarations are your agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between you and the company or any of our agents relating to this insurance.

**14. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**15. Transfer of Rights of Recovery Against Others to Us**

    **a.** If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

    **b.** Any recoveries shall be applied as follows:

        **(1)** First, we will reimburse anyone, including the insured, the amounts actually paid by them that were in excess of our payments;

        **(2)** Next, we will be reimbursed to the extent of our actual payment; and

        **(3)** Lastly, we will reimburse anyone, including the insured, as to which this policy is in excess are entitled to the residue, if any.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**16. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V - DEFINITIONS**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses committed in the course of advertising your goods, products or services:

    **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **b.** Oral or written publication of material that violates a person's right of privacy;

    **c.** Misappropriation of advertising ideas or style of doing business; or

    **d.** Infringement of copyright, title or slogan.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

Advertising means an advertisement, publicity article, broadcast or telecast.

2.  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.  "Auto" also means self-propelled vehicles with the following types of permanently attached equipment:

   a.  Equipment designed primarily for:

      (1)  Snow removal;

      (2)  Road maintenance, but not construction or resurfacing; or

      (3)  Street cleaning;

   b.  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

"Auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

4.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

6.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b.  Your fulfilling the terms of the contract or agreement.

7.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

8.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b.  Vehicles maintained for use solely on or next to premises you own or rent;

   c.  Vehicles that travel on crawler treads;

   d.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1)  Power cranes, shovels, loaders, diggers or drills; or

      (2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e.  Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

000077

(2) Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

**9.** "Occurrence" means:

   **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage".

     All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "occurrence".

   **b.** An offense that results in "personal injury" or "advertising injury". All damages that arise from the same act, publication or general conditions shall be deemed to arise from one "occurrence" regardless of:

     (1) The frequency of repetition;

     (2) The number or kind of media used; or

     (3) The number of claimants.

**10.** "Personal injury" means injury other than "bodily injury" arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication of material that violates a person's right of privacy; or

   **f.** Discrimination, unless insurance coverage therefor is prohibited by law or statute.

**11.** "Products-completed operations hazard" means:

   **a.** All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1) Products that are still in your physical possession; or

     (2) Work that has not yet been completed or abandoned.

   **b.** "Your work" will be deemed completed at the earliest of the following times:

     (1) When all of the work called for in your contract has been completed.

     (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

     (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **c.** This hazard does not include "bodily injury" or "property damage" arising out of:

     (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it; or

     (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

**12.** "Property damage" means:

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

    **a.** Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**13.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such money damages are claimed and to which you must submit or do submit with our consent;

    **b.** Any other alternative dispute resolution proceeding in which such money damages are claimed and to which you submit with our consent; or

    **c.** An appeal of a civil proceeding.

**14.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**15.** "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in SECTION I.C. of this policy.

**16.** "Underlying insurance" means the policies of insurance listed in the Schedule of Underlying Policies and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this policy covers.

**17.** "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Policies has been reduced solely by payment of loss for an "occurrence" during the policy period.

**18.** "Your product" means:

    **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(1)** You;

        **(2)** Others trading under your name; or

        **(3)** A person or organization whose business or assets you have acquired; and

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    "Your product" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

    **b.** The providing of or failure to provide warnings or instructions.

    "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

    "Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

b.  The providing of or failure to provide warnings or instructions.

IN WITNESS WHEREOF, we have caused this policy to be signed by our Secretary and President at Cincinnati, Ohio and countersigned on the Declarations page by authorized agents of The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

The Cincinnati Insurance Company
The Cincinnati Indemnity Company

Secretary

President

The Cincinnati Casualty Company

President

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

US 101 P 04 99

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

1.  This insurance does not apply:

    A.  To any liability:

        (1)  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  To any liability resulting from the "hazardous properties" of "nuclear material", if

        (1)  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

        (2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (3)  The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this exclusion:

    A.  "Hazardous properties" include radioactive, toxic or explosive properties;

    B.  "Nuclear material" means "source material", "special nuclear material" or "by-product material";

    C.  "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    D.  "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    E.  "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

    F.  "Nuclear facility" means:

        (1)  Any "nuclear reactor";

        (2)  Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste";

        (3)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

        (4)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

        and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    G.  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    H.  "Property damage" includes all forms of radioactive contamination of property.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

000081

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS POLICYHOLDER NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**Premium:**

We are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act of 2002.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**Federal Participation:**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**Act of Terrorism:**

As defined in Section 102(1) of the Act, the term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT OF 2002 FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

IA 4236 11 02

000082

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act of 2002 and any amendments thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 and any amendments thereto. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002 and any amendments thereto, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**C. Application of Other Exclusions**

The inapplicability, omission or absence of a terrorism exclusion does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or endorsement such as losses excluded by:

1. Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination; or

2. Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Act of 2002 and any amendments thereto expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

IA 4238 02 03

000083

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company. The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

000084

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS-MADE**

**Exclusions (Section I.B.) is modified to add the following:**

1.  This policy does not apply to:

    a.  "Property damage" to:

        (1)  Leased, rented, or borrowed equipment; or

        (2)  Property being transported, installed, erected, or worked upon by the insured or any contractors or subcontractors working directly or indirectly on your behalf.

    b.  Any liability arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

        (1)  Providing engineering, architectural or surveying services to others; and

        (2)  Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

        Professional services include:

        (1)  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

        (2)  Supervisory or inspection activities performed as part of any related architectural or engineering activities.

        However, to the extent coverage is provided by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Policies, and then only for such hazards for which coverage is afforded by such "underlying insurance", professional services shall not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with construction work you perform.

2.  The following exclusions apply unless insurance is provided to the insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Policies, but only to the extent insurance is provided at the limits specified by such "underlying insurance" and subject to all its limitations and exclusions:

    This policy does not apply to:

    a.  "Property damage" arising out of:

        (1)  Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

        (2)  The collapse of or structural injury to any building or structure due to:

            (a)  Grading of land, excavating, burrowing, filling or backfilling, tunneling, pile driving, cofferdam work or caisson work; or

            (b)  Moving, shoring, underpinning, raising, or demolition of any building or structure or removal or rebuilding of any structural support thereof.

    b.  "Property damage" to wires, conduit, pipes, mains, sewers, tanks, tunnels or other similar property, or any apparatus in connection therewith, below the surface of the ground, if such "property damage" is caused by and occurs during the use of mechanical equipment for the purpose of grading of land, paving, excavating, drilling, burrowing, filling, backfilling, or pile driving.

c.  Any liability assumed under any contract.

d.  Any liability arising out of any project insured at any time under an owner or contractor controlled insurance program (often referred to as a wrap-up plan or program) or similar insurance plan or program.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS-MADE**

**Section I - Coverages, B. Exclusions** is modified as follows:

Exclusion **13.** is deleted and replaced by the following:

This policy does not apply to:

**13. Pollutant**

   **a.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, emission, migration, release or escape of pollutants:

      **(1)** That are, or that are contained in any property that is:

         **(a)** Being transported or towed by, handled, or handled for movement into, onto or from the "auto";

         **(b)** Otherwise in the course of transit by or on behalf of the insured; or

         **(c)** Being stored, disposed of, treated or processed in or upon the "auto".

      **(2)** Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

      **(3)** After the pollutants or any property in which the pollutants are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

      Paragraph **(1)** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if the pollutants escape, seep, migrate, or are discharged, dispersed, released or emitted directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

      Paragraphs **(2)** and **(3)** above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to pollutants not in or upon an "auto" if:

         **(a)** The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

         **(b)** The discharge, dispersal, seepage, emission, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

   **b.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, emission, migration, release or escape of pollutants:

      **(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

      **(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

      **(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

      **(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(a)**  If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(b)**  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **b.(1)** and **b.(4) (a)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

Subparagraphs **b.(1)** and **b.(4) (a)** also do not apply if insurance is provided to the insured by an insurance coverage specifically listed in the Schedule of Underlying Policies at the "underlying limit" scheduled, but only to the extent "bodily injury" coverage is provided by that insurance coverage specifically listed in the Schedule or Underlying Policies and subject to all its terms and conditions.

Subject to the Each Occurrence Limit, any coverage provided by this endorsement is subject to a Pollutant Annual Aggregate Limit, if that coverage is subject to an aggregate limit in the insurance coverage specifically listed in the Schedule of Underlying Policies. The Pollutant Annual Aggregate Limit:

**(a)**  Shall be equal to the Aggregate Limit shown in the Declarations; and

**(b)**  Is the most we will pay for all such damages in each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**c.**  Any loss, cost or expense arising out of any:

**(1)**  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)**  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

**d.**  Any liability caused by pollutants excluded by "underlying insurance".

Pollutants means any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment.

Exclusion **13.** applies to every injury to person or property caused directly or indirectly by pollutants regardless of whether:

**(1)**  The insured is regularly or otherwise engaged in activities that taint or degrade the environment; or

**(2)**  The insured uses, generates or produces the pollutant.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS")

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

1. **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

   This policy does not apply to any liability that arises out of, is caused by, or attributable to, whether in whole or in part, the following:

   a. The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or "direct-applied exterior finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealant in connection with either system and including any method or procedure used to correct problems with installed or partially installed systems; or

   b. Any work or operations conducted by or on behalf of any insured on or to an "exterior insulation and finish system" or "direct-applied exterior finish system", or any component thereof, or any component of a building or structure to which an "exterior insulation and finish system" or "direct-applied exterior finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture into or on any part of the building or structure on which you perform such work or operations.

   However, this exclusion does not apply if **a.** or **b.** above was performed by or on behalf of any insured and begun before **02-23-2002** .

   This exclusion shall also apply to any "bodily injury", "property damage", "personal injury" or "advertising injury":

   a. For which any insured assumes liability in any part of any contract or agreement;

   b. Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of any "exterior insulation and finish system" or "direct-applied exterior finish system"; and

   c. Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warning or instructions with regard to any "exterior insulation and finish system" or "direct-applied exterior finish system".

2. **SECTION V - DEFINITIONS** is modified to add the following:

   a. "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

      (1) A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

      (2) The adhesive and / or mechanical fasteners used to attach the insulation board to the substrate;

      (3) A reinforced or unreinforced base coat or mesh;

      (4) A finish coat providing surface texture to which color may be added; and

      (5) Any flashing, caulking or sealant used with the system for any purpose.

   b. "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system used on any part of any structure, and consisting of:

      (1) A rigid or semi-rigid substrate;

      (2) The adhesive and / or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

      (3) A reinforced or unreinforced base coat or mesh;

      (4) A finish coat providing surface texture to which color may be added; and

      (5) Any flashing, caulking or sealant used with the system for any purpose.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

000089

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AUTO RACING EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS MADE**

Exclusions (SECTION I.B.) is modified to add the following exclusion:

This policy does not apply to "bodily injury", "personal injury", "advertising injury" or "property damage" arising out of the ownership, maintenance, operations, use, loading or unloading of any "auto" while being used in any prearranged or organized racing, speed or demolition contest, or in practice or preparation for any such contest.

US 357 01 96

000090

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS MADE**

The policy is modified to add the following:

1. Insuring Agreement (SECTION I.A.) is modified to add the following:

   EMPLOYEE BENEFIT LIABILITY: We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages because of any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit programs.

   This insurance applies only to negligent acts, errors or omissions:

   **(a)** whose damages are in excess of the "underlying insurance" provided by an Employee Benefit Liability policy listed in the Schedule of Underlying Policies; and

   **(b)** which occur during the policy period.

2. Exclusions (SECTION I.B.) is modified to add the following exclusion:

   This policy does not apply to any liability arising out of employee benefit programs unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Policies, and then only for such hazards for which coverage is afforded by such "underlying insurance".

US 407 01 96

000091

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - CANCELLATION

This endorsement modifies insurance provided under the following:

**CLAIMS-MADE EXCESS LIABILITY POLICY**
**COMMERCIAL UMBRELLA LIABILITY POLICY**
**EXCESS LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS-MADE**

**A.** The **Cancellation** Condition of this policy is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification of the Director of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**WHEN WE DO NOT RENEW**

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   **a.** You; and

   **b.** The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   **a.** On the expiration date, if:

    **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

    **(2)** We have indicated our willingness to renew this policy to you or your representative; or

    **(3)** You have notified us or our agent that you do not want to renew this policy.

  **b.** On the effective date of any other insurance replacing this policy.

**C.** Mailing of Notices

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

T J ADAMS GROUP LLC
333 E BUTTERFIELD RD
SUITE 500
LOMBARD IL  60148

12207

Dear Agent:

Our Commercial Lines Team has taken considerable care to process this policy correctly. We think you will be pleased with its neatness and accuracy. HOWEVER, IF THE POLICY HAS NOT BEEN PRODUCED TO YOUR SATISFACTION PLEASE INDICATE THE PROBLEMS AND RETURN IT DIRECTLY TO MY ATTENTION VIA FAX (513) 881-8656. I will see that the corrected policy is processed on a priority basis.

Thank you for placing this coverage with The Cincinnati Insurance Companies!

Best Regards,

Thomas A. Joseph
Senior Vice President
Commercial Lines

Policy Number: CCC 448 50 58

Effective Date:    02-23-2003

Named Insured:    GREG GREENHILL CONSTRUCTION, CO., INC.

Underwriter          LINDA WITTERIDE

Rater

Typist               LINDA BOWLING

PREMIUM                          COMMISSION

15,973 ANNUAL/ INST. PREM.        15%

000094