# EXHIBIT A

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

CORNELIA JOHNSON,                    )
                                     )
    Plaintiff,                       )
                                     )
            vs.                  )      No.    04 L 434
                                     )
JAMES SCOTT CUSTOM BUILDERS,         )
DUPAGE DESIGN & CONSTRUCTION, INC.,  )
NORTHERN ILLINOIS HOME BUILDERS      )
ASSOCIATION, INC., VILLAGE OF        )
PLAINFIELD, MOSER ENTERPRISES, INC., )
and MPI-1 DEVELOPMENT LLC,           )
                                     )
    Defendants.                      )

## FIRST AMENDED COMPLAINT AT LAW

Now comes, the plaintiff, CORNELIA JOHNSON, by her attorneys, NEWMAN, BOYER &

STATHAM, LTD., and complains against the defendants, JAMES SCOTT CUSTOM BUILDERS,

DUPAGE DESIGN & CONSTRUCTION, INC., NORTHERN ILLINOIS HOME BUILDERS

ASSOCIATION, INC., VILLAGE OF PLAINFIELD, MOSER ENTERPRISES, INC., and MPI-1

DEVELOPMENT LLC, in the alternative, as follows:

### COUNT I
### Premises Liability: DUPAGE DESIGN & CONSTRUCTION, INC.

1.  At all times relevant, defendant, DUPAGE DESIGN & CONSTRUCTION, INC., is and was

an Illinois Corporation that owned a parcel and its subject improvements, located at or near 26009

Whispering Woods Circle, Plainfield, Will County, Illinois.

2.  On August 1, 2003, the subject premises was open to public viewing as part of a tour of

model homes, as organized by co-defendant, NORTHERN ILLINOIS HOME BUILDERS

ASSOCIATION, INC.

3.  On August 1, 2003, a pole and rope barrier system was in place to direct individuals

proceeding through the tour of homes to enter and exit each model home at a specific point and to

keep such individuals off of lawns and landscaped areas.

4.  On August 1, 2003, individuals were directed to exit the subject premises along the driveway

and to use the adjacent street, Whispering Woods Circle, in order to enter the next model home of

the tour.

5.  On August 1, 2003, the driveway of the subject premises abutted a curb which ran along the edge of the street, Whispering Woods Circle.

6.  On August 1, 2003, there existed a substantial gap and height variation where the curb met the driveway and street caused by broken and deteriorated concrete and asphalt.

7.  On August 1, 2003, plaintiff was an invitee upon the property owned, managed, maintained and controlled by the defendant, DUPAGE DESIGN & CONSTRUCTION, INC., at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois.

8.  On August 1, 2003, defendant owed plaintiff a duty to exercise ordinary care in the possession, maintenance, management, operation, and control of the premises, including the duty to maintain a safe passage of egress from the premises.

9.  At all times relevant, defendant, through its agents and employees, in violation of its duty, committed one or more of the following careless and negligent acts or omissions:

   a.  Failed to maintain the area by permitting a substantial gap to develop between the curb, driveway and street, caused by broken and deteriorated concrete and asphalt, that the defendant knew or should have known created an unreasonably dangerous tripping hazard;

   b.  Failed to allow individuals to use alternative pathways when the defendant knew or should have known that the subject route contained an unreasonably dangerous tripping hazard caused by the broken and deteriorated concrete and asphalt;

   c.  Failed to erect warnings, barricades or other like devices in and around the substantial gap so as to properly and adequately inform pedestrians of the hazard created by the substantial gap between the curb, driveway and street;

   d.  Failed to inspect the substantial gap when such inspection would have revealed the unreasonably dangerous tripping hazard;

   e.  Negligently adopted, implemented, and or approved a plan or design for a pathway when the defendant knew or should have known that the substantial gap created an unreasonably dangerous tripping hazard considering the high volume of pedestrian traffic the defendant directed to travel on the subject pathway;

   f.  Allowed and permitted a variation in height between the curb and roadway asphalt creating a tripping hazard;

   g.  Failed to repair the substantial gap between the curb and roadway;

   h.  Failed to repair the change in elevation between the curb, driveway and roadway asphalt; and,

-2-

    i.   Allowed water from the lawn sprinklers to drain over the curbs.

10. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions on the part of the defendant, plaintiff tripped and fell on the curb where it meets the street and suffered great and serious injuries.

11. Plaintiff thus sustained the following damages:

    a.   Medical expenses, past and future;

    b.   Permanent disability and disfigurement;

    c.   Pain and suffering, past and future; and,

    d.   Loss of a normal life.

WHEREFORE, plaintiff, CORNELIA JOHNSON, prays this court for the entry of judgment against the defendant, DUPAGE DESIGN & CONSTRUCTION, INC., in a sum sufficient to appropriately compensate her for her aforesaid damages which are well in excess of the jurisdictional minimum of this court, plus costs.

### COUNT II
### Negligence: JAMES SCOTT CUSTOM BUILDERS

1. At all times relevant, defendant, JAMES SCOTT CUSTOM BUILDERS, was the builder of a certain home located at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois.

2. On August 1, 2003, the subject premises was open to public viewing as part of a tour of model homes, as organized by co-defendant, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC..

3. On August 1, 2003, a pole and rope barrier system was in place to direct individuals proceeding through the tour of homes to enter and exit each model home at a specific point and to keep such individuals off of lawns and landscaped areas.

4. On August 1, 2003, individuals were directed to exit the subject premises along the driveway and to use the adjacent street, Whispering Woods Circle, in order to enter the next model home of

the tour.

5. On August 1, 2003, the driveway of the subject premises abutted a curb which ran along the edge of the street, Whispering Woods Circle.

6. On August 1, 2003, there existed a substantial gap and height variation where the curb met the driveway and street caused by broken and deteriorated concrete and asphalt.

7. On August 1, 2003, plaintiff was an invitee upon the property managed, maintained and controlled, by the defendant, JAMES SCOTT CUSTOM BUILDERS, at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois.

8. On August 1, 2003, defendant owed plaintiff a duty to exercise ordinary care in the possession, maintenance, management, operation, and control of the premises, including the duty to maintain a safe passage of egress from the premises.

9. At all times relevant, defendant, through its agents and employees, in violation of its duty, committed one or more of the following careless and negligent acts or omissions:

    a. Failed to maintain the area by permitting a substantial gap to develop between the curb, driveway and street, caused by broken and deteriorated concrete and asphalt, that the defendant knew or should have known created an unreasonably dangerous tripping hazard;

    b. Failed to allow individuals to use alternative pathways when the defendant knew or should have known that the subject route contained an unreasonably dangerous tripping hazard caused by the broken and deteriorated concrete and asphalt;

    c. Failed to erect warnings, barricades or other like devices in and around the substantial gap so as to properly and adequately inform pedestrians of the hazard created by the substantial gap between the curb, driveway and street;

    d. Failed to inspect the substantial gap when such inspection would have revealed the unreasonably dangerous tripping hazard;

    e. Negligently adopted, implemented, and or approved a plan or design for a pathway when the defendant knew or should have known that the substantial gap created an unreasonably dangerous tripping hazard considering the high volume of pedestrian traffic the defendant directed to travel on the subject pathway;

    f. Allowed and permitted a variation in height between the curb and roadway asphalt creating a tripping hazard;

    g. Failed to repair the substantial gap between the curb and roadway;

    h.   Failed to repair the change in elevation between the curb, driveway and roadway asphalt; and,

    i.   Allowed water from the lawn sprinklers to drain over the curbs.

10. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions on the part of the defendant, plaintiff tripped and fell on the gap and curb where it meets the street and suffered great and serious injuries.

11. Plaintiff thus sustained the following damages:

    a.   Medical expenses, past and future;

    b.   Permanent disability and disfigurement;

    c.   Pain and suffering, past and future; and,

    d.   Loss of a normal life.

WHEREFORE, plaintiff, CORNELIA JOHNSON, prays this court for the entry of judgment against the defendant, JAMES SCOTT CUSTOM BUILDERS, in a sum sufficient to appropriately compensate her for her aforesaid damages which are well in excess of the jurisdictional minimum of this court, plus costs.

## COUNT III
### Negligence: NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC.

1. At all times relevant, defendant, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC., is and was an Illinois Corporation that hosts and organizes a public showcase of model homes demonstrating state of the art construction, interior design and landscaping.

2. On August 1, 2003, the premises located at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois, was open to public viewing as part of a tour of model homes, as organized by defendant, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC.

3. On August 1, 2003, a pole and rope barrier system was in place to direct individuals proceeding through the tour of homes to enter and exit each model home at a specific point and to keep such individuals off of lawns and landscaped areas.

4. On August 1, 2003, individuals were directed to exit the subject premises along the driveway

-5-

and to use the adjacent street, Whispering Woods Circle, in order to enter the next model home of the tour.

5. On August 1, 2003, the driveway of the subject premises abutted a curb which ran along the edge of the street, Whispering Woods Circle.

6. On August 1, 2003, there existed a substantial gap and height variation where the curb met the driveway and street caused by broken and deteriorated concrete and asphalt.

7. On August 1, 2003, plaintiff was an invitee upon the property managed, maintained and controlled by the defendant, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC.

8. On August 1, 2003, defendant owed plaintiff a duty to exercise ordinary care in the possession, maintenance, management, operation, and control of the premises, including the duty to maintain a safe passage of egress from the premises.

9. At all times relevant, defendant, through its agents and employees, in violation of its duty, committed one or more of the following careless and negligent acts or omissions:

    a.  Failed to maintain the area by permitting a substantial gap to develop between the curb, driveway and street, caused by broken and deteriorated concrete and asphalt, that the defendant knew or should have known created an unreasonably dangerous tripping hazard;

    b.  Failed to allow individuals to use alternative pathways when the defendant knew or should have known that the subject route contained an unreasonably dangerous tripping hazard caused by the broken and deteriorated concrete and asphalt;

    c.  Failed to erect warnings, barricades or other like devices in and around the substantial gap so as to properly and adequately inform pedestrians of the hazard created by the substantial gap between the curb, driveway and street;

    d.  Failed to inspect the substantial gap when such inspection would have revealed the unreasonably dangerous tripping hazard;

    e.  Negligently adopted, implemented, and or approved a plan or design for a pathway when the defendant knew or should have known that the substantial gap created an unreasonably dangerous tripping hazard considering the high volume of pedestrian traffic the defendant directed to travel on the subject pathway;

    f.  Allowed and permitted a variation in height between the curb and roadway asphalt creating a tripping hazard;

    g.  Failed to request the developer to repair the substantial gap between the curb and roadway;

h.  Failed to request the developer to repair the change in elevation between the curb, driveway and roadway asphalt;

i.  Permitted the "Cavalcade of Homes" to open to the public prior to the final layer of asphalt being applied to on the street which created a tripping hazard;

j.  Allowed water from the lawn sprinkler system to drain into the streets and over the curbs creating a slippery and dangerous condition; and

k.  Allowed members of the public to be routed and directed over an area of the streets and curbs which contained a tripping hazard.

10. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions on the part of the defendant, plaintiff tripped and fell on the curb where it meets the street and suffered great and serious injuries.

11. Plaintiff thus sustained the following damages:

a.  Medical expenses, past and future;

b.  Permanent disability and disfigurement;

c.  Pain and suffering, past and future; and,

d.  Loss of a normal life.

WHEREFORE, plaintiff, CORNELIA JOHNSON, prays this court for the entry of judgment against the defendant, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC., in a sum sufficient to appropriately compensate her for her aforesaid damages which are well in excess of the jurisdictional minimum of this court, plus costs.

## COUNT IV
### Negligence: VILLAGE OF PLAINFIELD

1.  At all times relevant, defendant, VILLAGE OF PLAINFIELD, is and was an Illinois municipality, duly authorized under the laws of the State of Illinois, which owned, operated, maintained and controlled certain streets and curbs within its boundaries, including Whispering Woods Circle.

2.  On August 1, 2003, the driveway of the property located at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois, abutted a curb which ran along the edge of the street, Whispering Woods Circle.

-7-

3. On August 1, 2003, there existed a substantial gap and height variation where the curb met the driveway of 26009 Whispering Woods Circle and the street caused by broken and deteriorated concrete and asphalt.

4. On August 1, 2003, plaintiff was an invitee upon the property owned, managed, maintained and controlled by defendant, VILLAGE OF PLAINFIELD, adjacent to 26009 Whispering Woods Circle, Plainfield, Will County, Illinois.

5. On August 1, 2003, defendant owed plaintiff a duty to exercise ordinary care in the possession, maintenance, management, operation, and construction of Whispering Woods Circle and the bordering curbs.

6. At the time and place aforesaid, defendant, through its agents and employees, in violation of its duty, committed one or more of the following careless and negligent acts or omissions:

    a. Failed to maintain the area by permitting a substantial gap to develop between the curb, driveway and street, caused by broken and deteriorated concrete and asphalt, that the defendant knew or should have known created an unreasonably dangerous tripping hazard;

    b. Failed to allow individuals to use alternative pathways when the defendant knew or should have known that the subject route contained an unreasonably dangerous tripping hazard caused by the broken and deteriorated concrete and asphalt;

    c. Failed to erect warnings, barricades or other like devices in and around the substantial gap so as to properly and adequately inform pedestrians of the hazard created by the substantial gap between the curb, driveway and street;

    d. Failed to inspect the substantial gap when such inspection would have revealed the unreasonably dangerous tripping hazard;

    e. Negligently adopted, implemented, and or approved a plan or design for a pathway when the defendant knew or should have known that the substantial gap created an unreasonably dangerous tripping hazard considering the high volume of pedestrian traffic the defendant directed to travel on the subject pathway;

    f. Allowed and permitted a variation in height between the curb and roadway asphalt creating a tripping hazard;

    g. Failed to repair the substantial gap between the curb and roadway;

    h. Failed to repair the change in elevation between the curb, driveway and roadway asphalt; and,

    i. Permitted the opening of the Cavalcade of Homes to the public prior to the completion

of the layer of asphalt on the street.

7. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions on the part of the defendant, plaintiff tripped and fell on the gap and height variance and suffered great and serious injuries.

8. Plaintiff thus sustained the following damages:

    a. Medical expenses, past and future;

    b. Permanent disability and disfigurement;

    c. Pain and suffering, past and future; and,

    d. Loss of a normal life.

WHEREFORE, plaintiff, CORNELIA JOHNSON, prays this court for the entry of judgment against the defendant, VILLAGE OF PLAINFIELD, in a sum sufficient to appropriately compensate her for her aforesaid damages which are well in excess of the jurisdictional minimum of this court, plus costs.

## COUNT V
### Negligence: MOSER ENTERPRISES, INC.

1. At all times relevant, defendant, MOSER ENTERPRISES, INC., is and was an Illinois Corporation that was a developer for certain parcels of land and public improvements such as streets and curbs in a subdivision commonly known as Grande Park Development.

2. At all times relevant, MOSER ENTERPRISES, INC. was responsible for the construction, installation of all streets and curbs within the subject subdivision.

3. At all times relevant, MOSER ENTERPRISES, INC., as a developer of the subdivision hired certain subcontractors to install and construct the streets and curbs of the subdivision.

4. At all times relevant, MOSER ENTERPRISES, INC., participated in the organizing and scheduling a "Cavalcade of Homes" which was an exhibition of the new homes being constructed in the subdivision.

5. On August 1, 2003, the premises located at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois, was open to public viewing as part of a tour of model homes, as

-9-

organized by defendant, MOSER ENTERPRISES, INC.

6.   On August 1, 2003, a pole and rope barrier system was in place to direct individuals proceeding through the tour of homes to enter and exit each model home at a specific point and to keep such individuals off of lawns and landscaped areas.

7.   On August 1, 2003, individuals were directed to exit the subject premises along the driveway and to use the adjacent street, Whispering Woods Circle, in order to enter the next model home of the tour.

8.   On August 1, 2003, the driveway of the subject premises abutted a curb which ran along the edge of the street, Whispering Woods Circle.

9.   On August 1, 2003, there existed a substantial gap and height variation where the curb met the driveway and street caused by broken and deteriorated concrete and asphalt.

10.   On August 1, 2003, plaintiff was an invitee upon the property managed, maintained and controlled by the defendant, MOSER ENTERPRISES, INC.

11.   On August 1, 2003, defendant owed plaintiff a duty to exercise ordinary care in the possession, maintenance, management, operation, and control of the streets and curbs in the subject subdivision, including the duty to maintain a safe ingress to and egress from the premises.

12.   At all times relevant, defendant, through its agents and employees, in violation of its duty, committed one or more of the following careless and negligent acts or omissions:

a.   Failed to maintain the area by permitting a substantial gap to develop between the curb, driveway and street, caused by broken and deteriorated concrete and asphalt, that the defendant knew or should have known created an unreasonably dangerous tripping hazard;

b.   Failed to allow individuals to use alternative pathways when the defendant knew or should have known that the subject route contained an unreasonably dangerous tripping hazard caused by the broken and deteriorated concrete and asphalt;

c.   Failed to erect warnings, barricades or other like devices in and around the substantial gap so as to properly and adequately inform pedestrians of the hazard created by the substantial gap between the curb, driveway and street;

d.   Failed to inspect the substantial gap when such inspection would have revealed the unreasonably dangerous tripping hazard;

-10-

e. Negligently adopted, implemented, and or approved a plan or design for a pathway when the defendant knew or should have known that the substantial gap created an unreasonably dangerous tripping hazard considering the high volume of pedestrian traffic the defendant directed to travel on the subject pathway;

f. Allowed and permitted a variation in height between the curb and roadway asphalt creating a tripping hazard;

g. Failed to repair the curbs and elevation between the curb and street prior to the opening of the "Cavalcade of Homes;

h. Failed to repair the change in elevation between the curb, driveway and roadway asphalt prior to the opening of the "Cavalcade of Homes"; and

i. Failed to install the final layer of asphalt of the street prior to the opening of the "Cavalcade of Homes".

13. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions on the part of the defendant, plaintiff tripped and fell on the gap and height variance and suffered great and serious injuries.

14. Plaintiff thus sustained the following damages:

a. Medical expenses, past and future;

b. Permanent disability and disfigurement;

c. Pain and suffering, past and future; and,

d. Loss of a normal life.

WHEREFORE, plaintiff, CORNELIA JOHNSON, prays this court for the entry of judgment against the defendant, MOSER ENTERPRISES, INC., in a sum sufficient to appropriately compensate her for her aforesaid damages which are well in excess of the jurisdictional minimum of this court, plus costs.

## COUNT VI
### Negligence: MPI-1 DEVELOPMENT LLC

1. At all times relevant, defendant, MPI-1 DEVELOPMENT LLC., is and was an Illinois Corporation that was a developer for certain parcels of land and public improvements such as streets and curbs in a subdivision commonly known as Grande Park Development.

2. At all times relevant, MPI-1 DEVELOPMENT LLC., was responsible for the construction,

-11-

installation of all streets and curbs within the subject subdivision.

3.  At all times relevant, MPI-1 DEVELOPMENT LLC., as a developer of the subdivision hired certain subcontractors to install and construct the streets and curbs of the subdivision.

4.  At all times relevant, MPI-1 DEVELOPMENT LLC., participated in the organizing and scheduling a "Cavalcade of Homes" which was an exhibition of the new homes being constructed in the subdivision.

5.  On August 1, 2003, the premises located at or near 26009 Whispering Woods Circle, Plainfield, Will County, Illinois, was open to public viewing as part of a tour of model homes, as organized by defendant, MPI-1 DEVELOPMENT LLC.

6.  On August 1, 2003, a pole and rope barrier system was in place to direct individuals proceeding through the tour of homes to enter and exit each model home at a specific point and to keep such individuals off of lawns and landscaped areas.

7.  On August 1, 2003, individuals were directed to exit the subject premises along the driveway and to use the adjacent street, Whispering Woods Circle, in order to enter the next model home of the tour.

8.  On August 1, 2003, the driveway of the subject premises abutted a curb which ran along the edge of the street, Whispering Woods Circle.

9.  On August 1, 2003, there existed a substantial gap and height variation where the curb met the driveway and street caused by broken and deteriorated concrete and asphalt.

10.  On August 1, 2003, plaintiff was an invitee upon the property managed, maintained and controlled by the defendant, MPI-1 DEVELOPMENT LLC.

11.  On August 1, 2003, defendant owed plaintiff a duty to exercise ordinary care in the possession, maintenance, management, operation, and control of the streets and curbs in the subject subdivision, including the duty to maintain a safe ingress to and egress from the premises.

12.  At all times relevant, defendant, through its agents and employees, in violation of its duty, committed one or more of the following careless and negligent acts or omissions:

a. Failed to maintain the area by permitting a substantial gap to develop between the curb, driveway and street, caused by broken and deteriorated concrete and asphalt, that the defendant knew or should have known created an unreasonably dangerous tripping hazard;

b. Failed to allow individuals to use alternative pathways when the defendant knew or should have known that the subject route contained an unreasonably dangerous tripping hazard caused by the broken and deteriorated concrete and asphalt;

c. Failed to erect warnings, barricades or other like devices in and around the substantial gap so as to properly and adequately inform pedestrians of the hazard created by the substantial gap between the curb, driveway and street;

d. Failed to inspect the substantial gap when such inspection would have revealed the unreasonably dangerous tripping hazard;

e. Negligently adopted, implemented, and or approved a plan or design for a pathway when the defendant knew or should have known that the substantial gap created an unreasonably dangerous tripping hazard considering the high volume of pedestrian traffic the defendant directed to travel on the subject pathway;

f. Allowed and permitted a variation in height between the curb and roadway asphalt creating a tripping hazard;

g. Failed to repair the curbs and elevation between the curb and street prior to the opening of the "Cavalcade of Homes;

h. Failed to repair the change in elevation between the curb, driveway and roadway asphalt prior to the opening of the "Cavalcade of Homes"; and

i. Failed to install the final layer of asphalt of the street prior to the opening of the "Cavalcade of Homes".

13. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions on the part of the defendant, plaintiff tripped and fell on the gap and height variance and suffered great and serious injuries.

14. Plaintiff thus sustained the following damages:

a. Medical expenses, past and future;

b. Permanent disability and disfigurement;

c. Pain and suffering, past and future; and,

d. Loss of a normal life.

WHEREFORE, plaintiff, CORNELIA JOHNSON, prays this court for the entry of judgment against the defendant, MPI-1 DEVELOPMENT LLC, in a sum sufficient to appropriately

-13-

compensate her for her aforesaid damages which are well in excess of the jurisdictional minimum of this court, plus costs.

Respectfully submitted,

David A. Statham

David A. Statham
NEWMAN, BOYER & STATHAM, LTD.
20 N. Clark Street
Suite 800
Chicago, Illinois 60602
ARDC # 6186154

-14-

# EXHIBIT B

JPG/ams/204-174                    06/13/06

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

DONNA MORSOVILLO,                    )
                                     )
                  Plaintiff,         )
                                     )
        v.                           )      No.:  05 L 522
                                     )
NORTHERN ILLINOIS HOME               )
BUILDERS ASSOCIATION d/b/a           )
CAVALCADE OF HOMES; MPI-I            )
DEVELOPMENT LLC,                     )
                                     )
                  Defendants.        )

### SECOND AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, DONNA MORSOVILLO, by and through her attorneys,

JOSEPH R. CURCIO, LTD., and in complaining of the Defendant, NORTHERN ILLINOIS

HOME BUILDERS ASSOCIATION d/b/a CAVALCADE OF HOMES; MPI-I DEVELOPMENT,

LLC, states as follows:

1.      On or about the 2nd day of August, 2003, the Defendant, NORTHERN

ILLINOIS HOME BUILDERS ASSOCIATION, was doing business as CAVALCADE OF

HOMES, at a location known as Grande Park, a master-planned community in the City of

Plainfield, County of Will, State of Illinois.

2.      That at said time as aforesaid, Grande Park was a master-planned

community which was being developed by the Defendant, MPI-I DEVELOPMENT LLC,

previously misnamed as MPI, a Joint Venture.

3.      At said time and place as aforesaid, the Plaintiff, DONNA MORSOVILLO, was

an invitee of the Defendant, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION and

was attending the CAVALCADE OF HOMES, for the purpose of viewing the homes that

were being marketed.

4.    That all times relevant herein, the defendants, and each of them, owed a duty to furnish premises free of defects to invitees.

5.    That while walking on the premises adjacent to 6 Oak Crest Lane, the plaintiff was directed onto the street, due to the fact that the sidewalks at said location were not allowed to be used for the CAVALCADE OF HOMES.  While walking from the driveway onto the street at said location, the Plaintiff, DONNA MORSOVILLO, was caused to and did fall with great force and violence due to a defect in the pavement at said location.

6.    The Defendants, and each of them, were then and there guilty of one or more of the following acts of negligence or omission which proximately caused injury to the plaintiff:

(a)    Carelessly and negligently required patrons at the CAVALCADE OF HOMES to exit the residences and not use the sidewalks;

(b)    Carelessly and negligently allowed a defect to remain on the driveway and street at said location;

(c)    Carelessly and negligently failed to warn of said defect;

(d)    Carelessly and negligently closed the sidewalk to pedestrian traffic during the CAVALCADE OF HOMES;

(e)    Was otherwise careless and negligent.

8.    Due to the injuries that were proximately caused by the negligence of the Defendants, and each of them, the Plaintiff, DONNA MORSOVILLO was seriously injured and has remained so to the present, she has suffered and will suffer great pain, has incurred medical expenses and will continue to do so in the future, has lost wages and will continue to do so in the future, and has incurred the loss of her normal life.

2

WHEREFORE, Plaintiff, DONNA MORSOVILLO, demands damages from the

Defendants, NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION d/b/a CAVALCADE OF

HOMES; MPI-I DEVELOPMENT LLC, previously misnamed MPI, a Joint Venture, for an

amount of damages in excess of $50,000.00.

Respectfully submitted,

JOSEPH R. CURCIO, LTD.

By: _____

John P. Goggin

Suite 2550
161 North Clark Street
Chicago, Illinois  60601
(312) 321-1111

3

# EXHIBIT C

30027

yellow

JPG/ams/204-174             11/16/05

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

| | | |
|---|---|---|
| DONNA MORSOVILLO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 05 L 522 |
| | ) | |
| NORTHERN ILLINOIS HOME | ) | |
| BUILDERS ASSOCIATION d/b/a/ | ) | |
| CAVALCADE OF HOMES; MPI a Joint | ) | |
| Venture of MOSER ENTERPRISES, | ) | |
| LLC., and PASQUINELLI & ISENSTEIN, | ) | |
| LLC, and R & S CUSTOM HOMES, INC. | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ANSWERS TO INTERROGATORIES
## PROPOUNDED BY DEFENDANT, M & S CUSTOME HOMES, INC.

To:    Nicholas J. Scarpelli, Esq., Scarpelli & Brady, LLC, 1550 North
       Northwest Highway, Suite 114, Park Ridge, Illinois 60068

cc:    All attorneys of record;
       see attached Service List, hereby made a part hereof.

1.   State your full name, address (both current and on date of occurrence),
date of birth, social security number, marital status, and names and ages of
any children.

**ANSWER:**   Donna Morsovillo
             3730 Charlemaine Drive
             Aurora, Illinois 60504
             Date of Birth: 12/19/47
             Social Security Number: 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; married to James
             Morsovilla; 1 daughter, Judith Ann Stapleton, 36.

2.   State the full name and address of each person who witnessed or claims
to have witnessed the occurrence alleged in your Complaint.

**ANSWER:**   My husband;
             Two other witnesses - names unknown at this time.

3.   State the full name and address of each person not named in
Interrogatory 2 above who was present or claims to have been present at the

scene immediately before, at the time of, or immediately after, said occurrence.

**ANSWER:** Unknown Employee of R. & S. Homes; Officer personnel of Cavalcade of Homes who arrived at the scene in a golf cart; Ambulance personnel for Plainfield Fire Department.

4. Describe, in general, the personal injuries sustained by you as a result of said occurrence.

**ANSWER:** Injuries to left hand, right ankle, left knee and left shoulder.

5. With regard to said injuries, state:

    a.   the name and address of each attending physician;

    b.   the name and address of each consulting physician;

    c.   the name and address of each person or laboratory taking an X ray of you;

    d.   the date or inclusive dates on which each of them rendered you service; and

    e.   the amounts to date of their respective bills for services, whether such bills have been paid, and from which of them you have written reports.

**ANSWER:** (a)   Dr. Glock
              M & M Orthopedics
              1988 Ogden, #210
              Aurora, Illinois

              Emergency Room Doctor
              Rush Copely Hospital
              Aurora, Illinois

              Dr. Richard Thomas
              Orthopedic Associates of DuPage, Ltd.
              Cantera Medical Offices
              27650 Ferry Road, Suite 100
              Warrenville, Illinois 60555

    (b)   None

      (c)    Rush Copley Medical Center
              M & M Orthopedics
              Orthopedic Associates of DuPage Ltd.
              Edward Hospital  -- MRI

      (d)    Dr. Glock - 08/04/03 to 12/03
              Dr. Thomas - 12/03 to present
              Emergency Room Physician/Date of Occurrence-08/03/03

      (e)    See attached list of Special Damages.

6. As a result of said personal injuries, were you a patient or outpatient in any clinic? If so, state the names and addresses of each hospital or clinic, the amounts of their respective bills, and the date or inclusive dates of their services.

**ANSWER:**  Yes; outpatient - Rush Copley Medical Center 08/03/03;
                outpatient - Edward Hospital - Hand surgery;
                outpatient - Central DuPage Surgical Center - Hand
                    Surgery (2) - Naperville, IL

7. As a result of said personal injuries, were you unable to work? If so, state

    a.    the name and address of your employer, if any, at the time;

    b.    the date or inclusive dates on which you were unable to work;

    c.    the amount of wage or income loss claimed by you; and

    d.    the name and address of your present employer, if any.

**ANSWER:**  No lost time claimed.

8. State any and all other expenses or losses you claim as a result of said occurrence.

**ANSWER:**  See list of Special Damages.

9. During the five years immediately prior to the date of said occurrence, had you been confined in a hospital, treated by a physician, or x-rayed for any reason other than personal injury? If so, state the name and address of each such hospital, physician, technician, or clinic, the approximate date of the confinement or service, and, in general, the reason for such confinement or service.

**ANSWER:** None.

10.   Had you suffered any personal injury prior to the date of said occurrence? If so, state when, where, and, in general, how you were so injured and describe, in general, the injuries suffered.

**ANSWER:**   Yes, April, 2001 - Hilton Waikoloa Hotel, Hawaii;
Getting off boat, sprained right ankle.
Hospital emergency room paid by hotel.
No other claims made for this incident.

11.   Have you suffered either (a) any personal injury or (b) illness since the date of said occurrence? If so, for item (a) state when and where and, in general, how you were injured and describe, in general, the injuries suffered; for item (b) state when you were ill and describe, in general, the illness.

**ANSWER:**   (a)   Yes, hit by car in parking lot in Orlando, Florida.
Emergency room bill paid by auto insurance company.
Soft tissue injury to right calf.

(b)   No.

12.   Have you ever filed any other suit for your own personal injuries? If so, state the court in which filed, the year filed, and the title and docket number of each case.

**ANSWER:** None.

13.   Were any photographs taken of the scene of the occurrence or of the persons or premises involved? Is so, state the date or dates on which such photographs were taken, the subjects thereof, and who now has custody of them.

**ANSWER:** Yes.

14.   Do you have statements from any witnesses other than yourself? If so, give the name and address of each such witness, the date of his or her statement, and state whether such statement was written or oral.

**ANSWER:** None.

15. List the names and addresses of all persons (other than yourself and persons heretofore listed or specifically excluded) who have knowledge of the conditions of the premises that allegedly caused the injury, the facts of said occurrence, or the injuries and damages following therefrom.

**ANSWER**: Names of Cavalcade of Homes personnel are not known.

16. Do you have any continuing complaints or disabilities of any kind resulting from the accident?

**ANSWER:** Yes.

17. If the answer to Interrogatory 16 above is in the affirmative, state

    a. the nature of the complaint or disability;

    b. the frequency of the complaint or disability; and

    c. what medical treatment you are receiving or taking for this complaint or disability.

**ANSWER:** (a) Left Hand - Deformity to small finger; cannot be Straightened;

        Left Wrist - Protruding bone which causes swelling with any type of movement;

        Right Ankle - painful; swells.

    (b) Daily;

    (c) None at present.

18. Describe where you fell.

**ANSWER:** See Answer to Bill of Particulars.

19. State in detail what caused your fall.

**ANSWER:** Lack of paved surface on street, which left irregularities and a drop off.

20. State any and all defects or conditions in the premises you claim caused your fall.

**ANSWER:** See Answer to Bill of Particulars.

21. If you are claiming that a substance on the ground caused your fall, how long had the substance been on the ground before you fell?

**ANSWER:** None.

22. What was the substance on the ground that caused your fall?

**ANSWER:** None.

23. When did you first become aware of each defect, or condition or substance on the ground?

**ANSWER:** After I fell.

24. When did Defendant become aware of the defect, or condition or substance on the ground?

**ANSWER:** Unknown, one of the employees of S & S was on the scene after The fall.

25. Who put the substance on the ground?

**ANSWER:** None.

_____

DONNA MORSOVILLO

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

_____

DONNA MORSOVILLO

JOSEPH R. CURCIO, LTD.
Attorneys for Plaintiff
Suite 2550
161 North Clark Street
Chicago, Illinois 60601
(312) 321-1111
Attorney Number: 02485

# EXHIBIT D

JPG/ams/204-174                    10/27/05

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

DONNA MORSOVILLO,                    )
                                     )
                Plaintiff,           )
                                     )
        v.                           )    No.  05 L 522
                                     )
NORTHERN ILLINOIS HOME               )
BUILDERS ASSOCIATION d/b/a           )
CAVALCADE OF HOMES; MPI, a Joint     )
Venture of MOSER ENTERPRISES, LLC,   )
and PASQUINELLI & ISENSTEIN, LLC,    )
and R & S CUSTOM HOMES, INC.,        )
                                     )
                Defendants.          )

### RESPONSE TO DEFENDANT'S R & S CUSTOM HOMES, INC. NOTICE AND DEMAND FOR BILL OF PARTICULARS

NOW COMES the plaintiff, DONNA MORSOVILLO, by her attorneys, JOSEPH R. CURCIO, LTD., and for her response to Defendant's, R & S CUSTOM HOMES, INC.'S Notice and Demand for Bill of Particulars, states the following:

1.    Please state with specificity the exact location where you fell utilizing any photographs and/or measurements that you may have.

**RESPONSE:**        I was walking in a crowd down the driveway of a R & S Home surrounded by a number of people, stepping off driveway into street since the sidewalks were blocked off by barricades.

2.    What was "defect", as alleged in paragraph 7 of your complaint that caused you to fall?

**RESPONSE:**        Street had not been finished. The surface on it touched the curing and it was rough and uneven.

3.    Please state the length, width, and height of said "defect"

**RESPONSE:**    Width of street is unknown.

4.    Please state how long this "defect" existed prior to this accident.

**RESPONSE:**    Unknown, never there before date of visit.

5.    Please state the name of the person or company who created this "defect".

**RESPONSE:**    Unknown, whoever put in the street.

6.    Please state whether you fell on the driveway or on the street.

**RESPONSE:**    Where the driveway meets the street.

7.    Please state whether you have any photographs of the "defect". Please attach color copies of the photographs to your response.

**RESPONSE:**    Yes, Copies attached hereto.

Respectfully submitted,

JOSEPH R. CURCIO, LTD.
Attorneys for Plaintiff

By: _____
John P. Goggin

Suite 2550
161 North Clark Street
Chicago, Illinois 60601
(312) 321-1111
    Attorney Number: 02485

2













Case 1:07-cv-08702-PAC Document 17-2 Filed 12/17/2007 Page 34 of 47







JPG/kam
10/06/05
RE: Donna Morsovillo

## STATEMENT OF DAMAGES

### HOSPITALS:

Rush-Copley Medical Center
2000 Ogden Avenue
Aurora, Illinois 60504

|  |  |
|---|---|
| 08/02/03 | $   1,574.00 |

The Center for Surgery
475 E. Diehl Road
Naperville, Illinois 60563

|  |  |
|---|---|
| 02/13/04 | 4,070.00 |
| 06/18/04 | 3,615.00 |

Edward Hospital
801 S. Washington Street
Naperville, Illinois 60540

|  |  |
|---|---|
| 02/10/04 | 144.00 |
| 10/01/04 | 2,606.50 |
| TOTAL: | $   12,009.50 |

### PHYSICIANS:

M&M Orthopaedics
4115 Fairview Avenue
Downers Grove, Illinois 60515

| Date | Physician | Amount |
|---|---|---|
| 08/04/03 | (Dr. Glock/Dr. Costabile) | $   289.00 |
| 08/04/03 | (Dr. Buranosky) | 769.00 |
| 08/12/03 | (Dr. Glock) | 1,093.00 |
| 08/18/03 | (Dr. Glock) | 76.00 |
| 08/18/03 | (Dr. Buranosky) | 110.00 |
| 08/29/03 | (Dr. Glock) | 76.00 |
| 09/15/03 | (Dr. Glock) | 76.00 |
| 09/29/03 | (Dr. Buranosky) | 55.00 |
| 09/29/03 | (Dr. Glock) | 177.00 |

| | | |
|---|---|---|
| 10/27/03 | (Dr. Glock) | 224.00 |
| 11/04/03 | (Dr. Glock) | 1,491.00 |
| 11/10/03 | (Dr. Glock) | 86.00 |
| 12/17/03 | (Dr. Buranosky) | 68.00 |
| 12/19/03 | (Dr. Glock) | 86.00 |

Dominick Costabile, M.D.
DuPage Medical Group
Woodridge Family Medicine
7409 Woodridge Drive
Woodridge, Illinois

| | |
|---|---|
| 08/07/03 | 55.00 |

Orthopaedic Associates of DuPage
Cantera Medical Offices
27650 Ferry Road, Suite 100
Warrenville, Illinois 60555

| | | |
|---|---|---|
| 12/08/03 | (Dr. Thomas) | 289.00 |
| 01/22/04 | (Dr. Thomas) | 192.00 |
| 02/13/04 | (Dr. Thomas) | 1,709.00 |
| 02/16-26/04 | (therapy) | 1,361.00 |
| 03/01-25/04 | (therapy) | 1,371.00 |
| 04/08/04 | (therapy) | 138.00 |
| 04/29/04 | (therapy) | 59.00 |
| 06/18/04 | (Dr. Thomas) | 3,893.00 |
| 06/21/04 | (therapy) | 278.00 |
| 06/22-30/04 | (therapy) | 711.00 |
| 07/01/04 | (Dr. Thomas) | 0.00 |
| 07/01-29/04 | (Therapy) | 1,122.00 |
| 08/02-12/04 | (therapy) | 767.00 |
| 08/16/04 | (Dr. Thomas) | 0.00 |
| 10/04/04 | (Dr. Thomas) | 205.00 |
| 11/04/04 | (therapy) | 280.00 |
| 11/04/04 | (Dr. Thomas) | 308.00 |
| 11/04/04 | (therapy) | 280.00 |
| 12/09/04 | (Dr. Thomas) | 92.00 |
| 12/23/04 | (Dr. Thomas) | 92.00 |

Valley Imaging Consultants, LLC
7808 W. College Drive
Palos Heights, Illinois 60463

| | |
|---|---|
| 08/02/03 | 56.00 |

Chenewoo Yeh, M.D.

10/14/04                                              702.00

DuPage Valley Anesthesiologist
185 Penny Avenue
East Dundee, Illinois 60118

02/13/04                                              552.00

West Central Anesthesiology Group
P.O. Box 1123
Jackson, MI 49204

06/18/04                                              781.00

                            TOTAL:    $    19,969.00


MISCELLANEOUS:

Plainfield Fire Protection District
P.O. Box 457
Wheeling, Illinois 60090

08/02/03                              $      325.00

Walgreens Pharmacy
3035 Book Road
Naperville, Illinois 60564

08/02/03                                       7.00

Jewel Osco
13460 S. Route 59
Plainfield, Illinois 60544

08/05/03     (medical supplies)               25.26

Deal $
Aurora, Illinois

08/08/03     (medical supplies)                4.08

Walgreens Pharmacy
2111 Winding River Road

Naperville, Illinois 60564

    08/12/03                                                14.00

Meijer
808 N. Route 59
Aurora, Illinois 60504

    10/11/03      (Motrin)                                   7.53
    02/18/04      (kling bandage)                            2.72
    06/18/04      (prescriptions)                           43.32

Osco Drug
2855 W. 95th Street
Naperville, Illinois 60564

    08/18/03                                                7.45
    09/19/03                                               30.36
    11/10/03                                               15.49
    02/13/04                                               19.65

Copies of Records                                          5.00
                                TOTAL:   $    506.86

APPROXIMATE GRAND TOTAL:  $   32,485.36

Re:   Donna Morsovilla v. Northern Illinois Home Builders Association, et al.
      Court Number: 05 L 22
      Our File Number: 204-174

## SERVICE LIST

Nicholas J. Scarpelli, Esq.
Scarpelli & Brady, LLC
1550 North Northwest Highway
Suite 114
Park Ridge, IL 60068
(847) 298-1700 (phone)
(847) 298-1820 (fax)

**ATTORNEYS FOR DEFENDANT:**
**R & S CUSTOM HOMES, INC.**

c. Murray Harris, Esq.
The Hunt Law Group
101 North Wacker Drive
Suite 612
Chicago, Illinois 60606
(312) 780-7481 (phone)
(312) 780-7587 (fax)

**ATTORNEYS FOR DEFENDANT:**
**NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION**

Kurt Aldinger, Esq.
Knight, Hoppe, Kurnik & Knight LLC
2860 River Road
Suite 400
Des Plaines, IL 60018-6009
(847) 298-8000 (phone)
(847) 298-8014 (fax)

**ATTORNEYS FOR DEFENDANT:**
**MOSER ENTERPRISES LLC**

James S. Koehler, Esq.
Grant, Ross & Fanning
550 West Washington Street
Suite 1600
Chicago, Illinois 60661
(312)775-9750 (phone)
(312)775-9777 (fax)

**ATTORNEYS FOR DEFENDANT:**
**PASQUINELLI & ISENSTEIN LLC**

# EXHIBIT E

COPY

# MPI – 1 DEVELOPMENT, LLC   *OCT 29*

## LAND DEVELOPMENT CONTRACT

**PROJECT NAME:**   GRANDE PARK – UNIT 1 & UNIT 2 ON-SITE

*Job # 10910/*

**PROJECT LOCATION:**   PLAINFIELD, IL

*Vendor # 02547*
*F.C. 7370*

**TRADE OR VENDOR:**   CONCRETE CURB; GUTTER

*Contract # 1073700 /*
*Contract-Amt. 140,881.95*

This Contract dated October 18, 2002, is made between **MPI – 1 DEVELOPMENT, LLC.** ("Contractor"),

and **GREG GREENHILL CONSTRUCTION CO., INC.** ("Subcontractor").

WITNESSETH, that in consideration of Subcontractor being selected to perform the work as described in paragraph 12 below (herein collectively referred to as the "Work") and in consideration of the covenants and agreements herein contained, the parties hereto hereby agree as follows:

**Work.**

A.   Subcontractor acknowledges that before executing this Contract, it: (i) visited the site and gave full consideration to the physical conditions and other factors which might affect the scope, cost, progress, performance or furnishing of the Work; and (ii) reviewed and examined the plans and specifications and all previous and succeeding work done by other trades to determine the correctness and accuracy of same. Subcontractor agrees that it will not at any time make and claim or demand based upon any alleged misunderstanding or misconception of its obligations hereunder, the scope of the Work, or the conditions under which the Work is to be performed, or for any additional expenses incurred by Subcontractor resulting from adverse soil or ground water conditions.

B.   Subcontractor shall perform and complete the work in a good and workmanlike manner in accordance with the plans and specifications and all applicable statutes, laws, rules and regulations. All labor, services and materials reasonably implied from the plans and specifications as being necessary to complete the Work shall be furnished and installed by Subcontractor without additional compensation. For all purposes herein, the status of Subcontractor is that of an independent contractor, and in no event shall Subcontractor be deemed this Contractor's agent or employee.

C.   The Work shall be performed on a portion or phase of a project or subdivision, as directed by Contractor. Subcontractor shall have no contract or right to perform the Work on the remainder of any project or subdivision, unless expressly approved in writing by Contractor.

D.   Subcontractor shall prosecute the Work diligently and in coordination and cooperation with other work on the Project, and Subcontractor shall at all times expedite its Work so as to permit the earliest possible completion of the Project.

**Contract Sum.**

A.   The contract sum, which shall include all Federal, State and local taxes arising out of the Work, is set forth in paragraph 12 below or in an exhibit attached to this Contract. The contract sum (and any designated labor and equipment rates for any additional work or materials authorized by the Contractor in writing) shall remain fixed for the designated term as therein set forth. Thereafter if either party desires to seek a change or adjustment in the contract sum, it shall give prior written notice to the other. The parties shall then attempt to negotiate such change, but the existing contract sum (and any designated labor and equipment rates) shall continue to apply until such time as a new written instrument is signed by the parties setting for the new terms.

B.   Without an authorized written Extra Work Order (EWO) issued by Contractor's main office, the contract sum shall not be increased or adjusted for any extra or additional work or materials claimed or performed by Subcontractor.

**Inspection, Examination and Testing.**

A.   All material and workmanship shall be subject to inspection, examination and testing by Contractor at any and all times during manufacture, construction and installation, and at any and all places where such manufacturing, construction and installation are carried on. Contractor shall have the right to reject defective material and workmanship or require its correction. Rejected workmanship shall be satisfactorily corrected by Subcontractor, and rejected material shall be satisfactorily replaced by Subcontractor with proper material without charge therefore. Subcontractor shall promptly segregate and remove rejected material from the project site. If Subcontractor fails to proceed at once with replacement of rejected material and the correction of defective workmanship, such failure shall constitute a default. Subcontractor shall be responsible for all costs incurred by Contractor to satisfactorily correct the work.

B.   Subcontractor shall promptly and properly request inspections of required by all applicable governmental bodies having jurisdiction of the Work for all labor and materials installed, and shall obtain all required approvals and acceptances thereof.

**Equipment or Material.**

A.   The handling, unloading, safe storage and the risk of loss of all deliveries of equipment and materials shall be Subcontractor's responsibility. No payment shall be due from, or made by Contractor for any delivered equipment or material until the same has been actually installed and incorporated in the project.

B.   Contractor shall not in any manner be liable or responsible for any loss or damage that shall happen to the Work or for any equipment, materials or tools that may be employed therein or placed upon the site by Subcontractor's employees, agents, subcontractors or any other person or entity for which Subcontractor has responsibility (such employees, agents, subcontractors and other parties being hereinafter collectively referred to as Subcontractor's "Affiliates"), it being expressly understood that the Subcontractor shall be fully responsible therefore until the Work has been fully completed and accepted by Contractor.

**Legal Compliance; Permits; Licenses.**

A.   Subcontractor shall comply with all applicable Federal, State and local laws, including without limitation, all State and Federal Employment compensation Workmen's Compensation, Social Security and Occupational Safety and Health Laws and requirements.

B.   Subcontractor shall at all times be licensed or qualified under all applicable law or regulations necessary for the lawful performance of the Work.

C.       Subcontractor shall, at its sole cost and expense, conform to the safety policies and regulations established by Contractor and shall comply with all specific safety requirements of all applicable Federal, State and local laws, statutes, ordinances, rules or regulations. Subcontractor shall have and exercise full responsibility for compliance hereunder by its Affiliates, and shall directly receive, respond to, defend, and be responsible for all citations, assessments, fines or penalties which may be incurred by reason of its failure, or failure on the part of its Affiliates, to so comply.

D.       Without in any manner limiting or restricting the covenants in subparagraph 5D above, (i) Subcontractor acknowledges and confirms that it is thoroughly familiar with the standards, requirements and obligations of the Occupational Safety and Health Act (42 U.S.C. 2651) ("OSHA"), has trained its Affiliates on such standards, requirements and obligations, and the performance of the Work shall at all times be in full compliance with such standards, requirements and obligations; and (ii) IN THE EVENT ANY FINE OR PENALTY IS LEVIED OR ASSESSED AGAINST THE CONTRACTOR (OR PASQUINELLI CONSTRUCTION CO. AND/OR THE OWNER OF THE SITE) ARISING OR RESULTING FROM ANY OSHA VIOLATIONS BY SUBCONTRACTOR OR ITS AFFILIATES, SUBCONTRACTOR SHALL PROMPTLY REIMBURSE CONTRACTOR FOR THE FULL AMOUNT OF SUCH FINE OR PENALTY AND SHALL HOLD FOR THE FULL AMOUNT OF SUCH FINE OR PENALTY AND SHALL HOLD HARMLESS, INDEMNIFY AND DEFEND THE CONTRACTOR FROM AND AGAINST ALL LOSSES, COSTS, EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS), JUDGMENTS AND DECREES RESULTING THEREFROM.

E.       Subcontractor shall bear all damages which it causes to the work of other contractors and subcontractors and shall promptly repair all damages to streets, curbs, utilities, sidewalks and other property caused by Subcontractor or its Affiliates.

Indemnity.  As used herein, "Claims" shall mean all claims, demands, legal actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs), judgments, and decrees arising out of or occasioned by or in any way connected with any act, failure to act, neglect or omission by Subcontractor or its Affiliates in the performance of the Work. Subcontractor agrees to hold harmless, indemnify and defend Contractor, and its officers, employees and agents, from and against any and all Claims resulting from personal or bodily injury to, or the death of, any persons whomsoever, including Contractor's or Subcontractor's employees, or injury or damage to, or destruction of, any property, or resulting federal, state or local statutes, laws ordinances, rules, regulations or orders. Nothing in the foregoing is intended as an agreement to indemnify or hold harmless Contractor, or its officers, employees and agents, from such person's own negligence. The provisions of this paragraph 6 shall survive the completion and acceptance of the Work and any termination of this Contract.

Insurance.

A.       Subcontractor, at its own expense, shall carry at all times the following insurance and coverages:

| Type | Minimum Limits |
|------|----------------|
| (1)   Comprehensive General Liability | $1,000,000, or |
|        (including Contractual liability | higher, each |
|        coverage with respect to the | category as |
|        indemnity set forth in paragraph | required |
|        6 above) | |
| (2)   Automobile Liability | $1,000,000 each |
|        | category |
| (3)   Workmen's | Statutory limit |
|        Compensation/Employer's | of not less than |
|        Liability | $100,000 |

Together with such other insurance and coverages as Contractor by written notice prior to the commencement of the Work shall have directed the Subcontractor to carry and maintain.

B.       Subcontractor shall not commence the Work unless and until it has obtained the above insurance and delivered to Contractor a certificate or memorandum evidencing such coverage (including the name of the carrier, policy number, limits and expiration date) and evidencing payment thereof by Subcontractor and naming the parties listed in Exhibit B as additional insureds.

C.       All insurance and coverages shall be in form and substance, and issued by credit rated companies, satisfactory to Contract.

D.       The policies evidencing the aforesaid insurance and coverages shall provide that (i) they cannot be canceled, amended or modified except after thirty (30) days advance notice in writing to Contractor, and (ii) the insurers or underwriters thereof waive their rights of subrogation against Contractor and any additional insured parties.

E.       Subcontractor shall report immediately to Contractor any injuries suffered by Subcontractor's employees or any injuries to other persons or property damage arising out of the performance of the Work. Contractor shall be furnished two (2) copies of the written accident report within three (3) days of the injury or damage.

Warranty.

A.       For a period of one (1) year from the date of final acceptance of the Work by the applicable municipality or governmental authority, (i) Subcontractor warrants that all the Work shall be free from defects in workmanship, material and design; an (ii) Subcontractor shall, upon notice from Contractor, and in a manner acceptable to Contractor, and at Subcontractor's sole cost and expense, promptly correct any defects in workmanship, materials and design and replace defective materials or equipment. Contractor's decision on any defect shall be the governing and controlling factor.

B.       The remedies provided to Contractor for defective work shall not be exclusive but shall be cumulative and in addition to all other remedies available to Contractor at law or in equity with respect to latent defects or fraud. If contractor deems it expedient to correct any defective work, the cost and expense thereof shall be charged against Subcontractor by deducting said amount from the contract sum.

C.       Contractor may occupy and use any portion of the Work which has been partially or fully performed by Subcontractor and such occupancy or use shall not constitute a waiver of any defects in or use of the Work.

D.       Neither the acceptance of the Work by Contractor, nor any payment of the whole or any part of the contract sum, nor any occupancy, use or possession of the Work by Contractor, shall operate as a waiver of any breach or default by Subcontractor of any of the provisions of this Contract.

Termination.

A.       Should Subcontractor fail to supply enough properly skilled workmen or proper materials, or fail in any manner to prosecute its work properly, or default in the performance of any provision of this Contract, then, in any of such events, Contractor may, after giving seven (7) days' written notice to Subcontractor, without prejudice to any other remedy Contractor might have, terminate the Contract and make good any deficiency, all at the expense of Subcontractor, and upon such termination Subcontractor shall not be entitled to receive any further payment to which it may be entitled until after the Work has been fully completed and accepted by Contractor. If the cost to Contractor to finish the Work shall exceed the unpaid balance of the contract sum Subcontractor shall promptly pay such difference to Contractor. Costs to the Contractor shall include, but not be limited to, any additional engineering, managerial and administrative services required thereby, any costs incurred in retaining another subcontractor, any additional interest or fees which Contractor must pay by reason of a delay in completion of the Work, attorneys' fees and expenses, and any other damages, costs and expenses the Contractor may incur by reason of completing the Work or any Delay thereof.

2

B.    Even if one of the circumstances or events giving rise to Contractor's right to terminate under paragraphs A or B above are present, Contractor shall have the right at any time upon thirty (30) days' written notice to Subcontractor to terminate the Contract without incurring any liability to Subcontractor therefor beyond payment to Subcontractor for the actual portion of the Work performed by the Subcontractor prior to such termination, which payment shall be made when, subject to Contractor's receipt from Subcontractor of the required payment documentation as provided elsewhere in this Contract

## Payment and Documentation:

A.    Each Application of payment shall be accompanied by Subcontractor's Application and Certificate for Payment (AIA-G702 and AIA-G703) waiver of lien and affidavit, together with supporting waivers of lien and affidavits form its Subcontractors and suppliers.  All waivers of lien and affidavits shall be in form and substance satisfactory to Contractor. Subcontractor's application for payment shall be subject to the engineer's review and approval and concurred to by Contractor  The amount of Work in place shall be subject to verification by the Owner's field representative

B.    There shall be a ten percent (10%) retention on each progress payment. Such retention shall be reduced to five percent (5%) when the Work is at least ninety percent (90%) completed.  When the work is fully completed, but prior to final acceptance of the Work by the applicable municipality or governmental authority ("Final Acceptance), the retention shall be reduced to two percent (2%)  Upon Final Acceptance the remaining retention shall be released and paid to Subcontractor

C.    Subcontractor shall keep the premises upon which the Work is performed free of any claim or lien.  Should any claim or lien be asserted or filed,  and Subcontractor has failed to satisfy such claim or lien or failed to deliver a specific bond satisfactory to the Owner and Contractor to secure the satisfaction and discharge of such lien Contractor may, after three (3) days' written notice to Subcontractor, pay over an amount sufficient to discharge such claim or lien and charge the same against the Subcontractor by deducting said amount from the contract sum. Subcontractor further agrees to hold harmless, indemnify and defend Contractor and the owner of the premises from and against all loss, costs, damage  expense (including attorney's fees and court costs), liability, judgment or decree, which Contractor may sustain in connection with any such claim or lien

## Assignment; Amendment; Conflicts:

A.    Subcontractor shall not sublet or assign this Contract, nor sell or assign the proceeds thereof, with out Contractor's prior written consent, which consent may be refused or withheld for any reason whatsoever.  Except for the foregoing restriction, the terms and provision of this Contract shall inure to and be binding upon Subcontractor's heir  executors, legal representatives, successors and assigns

B.    Subcontractor agrees to accept an assignment of this contract in its entirety to the lender financing the work site or project, or to any successors of Contractor.  Subcontractor will execute such assignment  together with such other appropriate documentation pertaining to such assignment or as may be requested by such lender

C.    The terms and provisions of this Contract hereby supersede all prior negotiates, representations or agreements, either written or oral, and may not be amended  modified or supplemented except by a written instrument signed by Subcontractor and Contractor

D.    No term, provision, condition or obligation contained in any written bid, proposal, or other document by Subcontractor shall be binding upon the Contractor unless the same is expressly incorporated in a separate written instrument signed by Subcontractor and Contractor.  If any of the terms or provision of such separate, signed written instrument creates any ambiguity or conflicts with any of the terms or provisions of this contract, the terms and provisions of this contract shall govern and control

E.    Failure or delay by Contractor to insist in any one or more instances upon the performance of any provisions of this Contract or to exercise any right, power or privilege hereunder, shall not be deemed a waiver or relinquishment of the future performance of any such provisions or the future exercise of any such right  power or privilege

## Additional Provisions and Contract Documents:

Exhibit A: Schedule of Quantities and Unit Prices (Proposal Dated 9/16/02)

Exhibit B: Invoice Procedure

Exhibit C: Special Provisions

IN WITNESS WHEREOF  the parties have executed this contract as of the date first above written

CONTRACTOR:                                SUBCONTRACTOR:

MPI – 1 DEVELOPMENT, LLC.                   GREG GREENHILL CONSTRUCTION CO., INC.

By: _[signature]_                          By: _[signature]_
Tom Small                                      Authorized Signature

_[signature]_                              _Sec./Treasurer_
Tony Pendrelli                                 Title

_[signature]_                              Date: _10-23-02_
Mel Stephen

_[signature]_
Art Ziemke

*EXHIBIT "A"*

**Greg Greenhill Construction Co., Inc.**
5419 Hayden Lane
Ringwood, Illinois 60072
(815) 653-CURB    (815) 728-9381 Fax

P R O P O S A L

September 16, 2002

Mr. Craig McDuff
MPI Plainfield Joint Venture
535 Plainfield Road
Suite E
Willowbrook, Illinois 60527

RE:    Proposal for Grande Park, Plainfield, Illinois

Dear Craig:

Below you will find our prices for the above project:

16,785 lf. M-3 12 Curb & Gutter with 10"flag, 60'expansions and 2-#4 continuous re-bar @ $7.95 lf.
(Total $133,440.75)

936 lf. B-6 12 Curb & Gutter with 10"flag, 60'expansions and 2-#4 continuous re-bar @ $7.95 lf.
(Total $7,441.20)

Price is to set line, trim and pour, based on 3,500 lf. minimum pour, final quantities to be measured
in place  Price does not include barricades/traffic control, gravel, excavation, backfilling, restoration,
winter protection, testing, bonding or permits.

**PAYMENTS**
All payments are due within Thirty (30) days of date of invoice. A service charge of 1 ½% per month
will be due on any invoice, which is not paid within Sixty (60) days  No retention will be held on this
project

This proposal is valid for thirty (30) days and may be withdrawn by Greg Greenhill Construction
Co , Inc. at such time. If you have any questions, please do not hesitate to contact me

Sincerely,

Vic Garcia
Vice-President

Please sign and date the bottom of this letter and return it to us as an acceptance to the above
proposal

_____        _____
Accepted By                                    Date

EXHIBIT "B"



## MPI – I DEVELOPMENT, LLC.

535 Plainfield Road   Phone: (630) 325-4500
Suite E       Fax:  (630) 325-5595
Willowbrook, IL 60527

October 18, 2002

Mr. Vic Garcia
Greg Greenhill Construction Co., Inc.
5419 Hayden Lane
Ringwood, IL 60072

RE: GRANDE PARK - UNIT 1 & 2
   ON SITE – CURB & GUTTER
   PLAINFIELD, IL

It is extremely important that when invoicing MPI – 1 DEVELOPMENT, LLC. that the
following information is included:

JOB NAME:  **GRANDE PARK UNIT 1 & 2 ON SITE**
JOB #:    **#109101**
VENDOR #:  **#02547**
Contract #:  **To follow**

Function Code:  **#7370**
Contract Amount: **$140,881.95**

Regarding the Certificate of Insurance, MPI – I Development, LLC is the Certificate Holder

The additional insureds are MPI –I Plainfield West, LLC, MPI – I Plainfield South, LLC,

Pasquinelli Construction Co   Pasquinelli Development Group  Inc., and Moser Enterprises,

Inc.

L:\DEVELOPMENT\SP\Plainfield - Grande Park-MPI #7000\1 1 Development LLC Contract\Greenhill U1 U2 On Site  Exb B 10-18-02.doc

EXHIBIT "C"

### CONCRETE CURB & GUTTER
### SPECIAL PROVISIONS OF THE CONTRACT

SPECIAL PROVISIONS ( SPECIAL PROVISIONS") TO THOSE CERTAIN·
CONSTRUCTION DOCUMENTS (AS MORE FULLY DEFINED BELOW) BY AND BETWEEN MPI-
1 DEVELOPMENT, LLC. ("CONTRACTOR") AND GREG GREENHILL CONSTRUCTION CO.,
INC. ('SUBCONTRACTOR') DATED OCTOBER 18, 2002 FOR THE CURB AND GUTTER AT
GRANDE PARK ("PROJECT") IN PLAINFIELD, ILLINOIS                :

<u>PLANS:</u>  The plans as listed below are bound separately; however, said plans are a component
part of the contract as fully as if attached hereto:

| | |
|---|---|
| Prepared By: | COWHEY GUDMUNDSON LEDER, LTD |
| Dated: | MARCH 22, 2002<br>REVISED AUGUST 19, 2002 |
| Surveyor: | MIDWEST TECHNICAL CONSULTANTS |
| Soils Report Prepared By: | TESTING SERVICE CORPORATION |
| Dated: | FEBRUARY 6, 2002 |

<u>PERMIT PROVISIONS:</u>  All work under this Contract shall be governed by the regulations
provisions and ordinances of the following agencies:

| | |
|---|---|
| A. | Village of Plainfield |
| B. | U.S Army Corps of Engineers |
| C | U.S Environmental Protection Agency |
| D | Illinois Environmental Protection Agency |
| E | Illinois Department of Transportation |
| F | Will County Highway Department |
| G | Other Applicable Agencies |

1   <u>ADDITIONS/DELETIONS TO CONTRACT PRICE</u>  Subcontractor shall be entitled
    to the additions to the Contract Price provided that in each such instance Subcontractor
    has notified the Contractor in advance of proceeding with the applicable work and has
    received from the Contractor an executed Extra Work Order or "EWO."

2   The contract specifications as noted on the Engineering Plans are part of this Contract.

3   In case of conflict, the more stringent requirement shall prevail unless waived by the
    Contractor or Engineer of record

4   The Contractor reserves the right to revise the plans so as to either raise or lower various
    quantities.  If the plans are revised the unit prices listed will be used to determine the new
    "UNIT PRICE NOT-TO-EXCEED" Price

5   The Contractor reserves the right to terminate the project at any time for any reason he
    deems fit  Subcontractor will be paid only for work actually performed at contract unit
    prices

6   The Contractor shall supply the Subcontractor with a schedule indicating the unit
    production sequence and the required rate of production prior to starting work.  It shall be
    the Subcontractor's responsibility to secure the necessary labor, material and equipment
    to comply with this schedule

7   It shall be the Subcontractor's responsibility to coordinate his work with other trades and
    to furnish information to other trades as required to assure harmony on the job site

8   It shall be the Subcontractor's responsibility to have qualified supervisory personnel on
    the job site at all times to assure compliance with the schedule, quality standards, and all
    applicable OSHA regulations

1